UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

——

ROBERT WAYNE ANNABEL,

                Plaintiff,                 Case No. 1:14-cv-756

v.                                  Honorable Paul L. Maloney

MICHIGAN DEPARTMENT
OF CORRECTIONS et al.,

                Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., the Rehabilitation Act (RA), 29 U.S.C. § 794, and the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964. The Court has granted Plaintiff leave to proceed *in forma pauperis*.[1] Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's

---

[1] Plaintiff is a frequent litigant in this Court and in the Eastern District of Michigan. Plaintiff previously has filed at least three actions that were dismissed because they were frivolous, malicious, failed to state a claim, or sued defendants who were immune from suit. As a consequence, Plaintiff has three strikes within the meaning of 28 U.S.C. § 1915(g). However, upon initial review, the Court has concluded that Plaintiff is not barred from proceeding *in forma pauperis* by the three-strikes rule of § 1915(g), because he alleges facts that, if believed, are sufficient to show that he is in imminent danger of serious bodily injury.

allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Heyns, Campbell, Smith, Huss, Norwood, Zwiker, and Nichols. The Court will serve the complaint against Defendants Yee, Gerlach, and Apol.

## Discussion

### I.    Factual allegations

Plaintiff Robert Wayne Annabel presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF), though some of his claims arose while he was housed at the Gus Harrison Correctional Facility (ARF). He sues the MDOC and its Director, Daniel Heyns, together with the following employees at ARF and ICF: ARF Deputy Warden Sherman Campbell; ARF Assistant Resident Unit Supervisor Ronald Nichols; ICF Warden Willie O. Smith; ICF Deputy Wardens Erica Huss and Nanette Norwood; ICF Sergeant (unknown) Zwiker; ICF Social Worker James Apol; ICF Psychiatrist (unknown) Yee; and ICF Doctor (unknown) Gerlach.

Plaintiff's complaint broadly alleges a sweeping conspiracy among MDOC employees at multiple facilities over many years. Plaintiff references his extensive litigation history between 2009 and the present. *See Annabel v. Heyns et al.*, No. 2:12-cv-13590 (E.D. Mich.); *Annabel v. Eaton et al.*, No. 4:14-cv-11429 (E.D. Mich.); *Annabel v. Heyns et al.*, No. 2:14-cv-11337 (E.D. Mich.); *Annabel v. Frost et al.*, No. 2:14-cv-10244 (E.D. Mich.); *Annabel v. Armstrong et al.*, No. 1:09-cv-796 (W.D. Mich.); *Annabel v. Caruso et al.*, No. 1:09-cv-176 (W.D. Mich.); *Annabel v. Gendernalik et al.*, No. 1:08-cv-15328 (E.D. Mich.); *Annabel v. Shertz et al.*, No. 2:07-cv-30 (W.D.

Mich.); *Annabel v. Eyke et al.*, No. 2:05-cv-209 (W.D. Mich.).   The majority of Plaintiff's allegations serve as mere background for the present complaint and as the basis for other complaints; the Court therefore will not recite those facts in detail.   Additional allegations in the complaint concern the suicides of two prisoners who had been housed near Plaintiff and whom Plaintiff had assisted with litigation; the Court will not fully describe the alleged harassment of those prisoners. Instead, the Court will discuss only those allegations that apply to Plaintiff's current complaint and to the Defendants in this action.

Plaintiff alleges that all Defendants retaliated against him for filing his many grievances and lawsuits.   According to the complaint,

> On April 30, 2014 three extreme occurrences coincidently took place while Plaintiff was at the Gus Harrison Correctional Facility, in Unit 4:  (1) <u>Annabel, II v. Heyns</u>, et al., Case No. 2:12-cv-13590 was dismissed; (2) Prisoner Abkedya Boyd #702008 committed a successful "suicide"; and (3) Sherman Campbell transferred the only Unit 4 prionser unit representative, Nolan #603761, to Unit 5 consistent with Cambell's intent to have removed Plaintiff from that same position in <u>Annabel, II v. Frost</u>, et al., Case No. 2:14-cv-10244.

(Compl. ¶ 21, docket #1, Page ID#9 (verbatim).)  Plaintiff contends that he had been assisting Boyd with a grievance appeal, and that Defendant Heyns must have identified Plaintiff has a proficient litigator.  On May 1, 2014, when Plaintiff left his unit to go to lunch, an unknown tall officer mocked Plaintiff about assisting other prisoners to prepare affidavits.

On May 13, 2014, Plaintiff told his RTP primary therapist, Mr. Dixon, that Plaintiff was requesting discharge from RTP to avoid further retaliation by ARF administrative employees, including Defendants Campbell and Nichols and two individuals not named in this action, James Eaton and Christine Hemry.  That same day, after Plaintiff had expressed his desire to leave the RTP program at ARF (a Level IV facility), Plaintiff was transferred to an outpatient treatment program

(OTP) at ICF (a Level V facility).  The transfer form was signed by Defendant Campbell, and Plaintiff assumes that Defendant Nichols helped Campbell prepare the forms.  Plaintiff alleges that he has since received a copy of the May 5, 2014, security classification screening form prepared by Nichols, which Plaintiff claims inaccurately counted a Class I misconduct ticket that had been dismissed.  Plaintiff nevertheless acknowledges that his classification security screenings routinely have qualified him for Level V placement, though he sometimes has been placed in Level IV facilities, notwithstanding the scoring.  He contends that he can be managed without Level V confinement.

When he was transferred to ICF, ARF officials attached a "stun cuff" to his left ankle. (*Id.* ¶ 33, Page ID#13.)  The cuff was removed when Plaintiff was turned over to transport officers at St. Louis, Michigan, who thereafter drove the bus to ICF.  Plaintiff complains that, if deployed, the cuff would have transmitted 80,000 volts, and he contends that use of the cuff was unnecessary.

Plaintiff claims that he experienced staff abuse at ICF in 2008 and briefly in 2011. As the result of these past abuses, Plaintiff claims to fear for his safety at ICF.  Plaintiff also asserts that, because he filed lawsuits about those earlier abuses, the 2014 transfer was undoubtedly retaliatory.  In addition, because of the incidents in 2008, Plaintiff initially refused both his food and medication at ICF, until roughly May 20, 2014, because he feared that unknown officials would contaminate both.

On May 16, 2014, shortly after his arrival at ICF, Plaintiff was interviewed by OPT social worker Apol.  Plaintiff complains that Defendant Apol was hostile and critical of Plaintiff and made insulting statements about Plaintiff.  Apol showed Plaintiff his nametag and told Plaintiff to

spell his name correctly if he sued him.  Defendant Apol warned Plaintiff that, if he continued to refuse his psychotropic medications, Apol would initiate forced medication proceedings.

On May 20, 2014, Plaintiff was interviewed by Defendant psychiatrist Dr. Yee. Plaintiff claims that Yee believes that bipolar diagnoses are best treated by a holistic approach, rather than standard psychotropic medication.  Defendant Yee implied that Plaintiff's hunger strike was an attempt to obtain a transfer, and he expressed no concern about Plaintiff's weight, as he would not be underweight until he reached 130 pounds.  Plaintiff agreed that he would start accepting both food and medication.

On May 24, 2014, after Plaintiff had resumed his meals and medication, both his psychotropic medication and his iron supplement were discontinued.  Defendant Yee apparently discontinued the psychotropic medication, and Defendant Gerlach reportedly discontinued the iron supplement.  Plaintiff alleges that the iron supplement is essential to treat his hereditary microcytic hypochromic anemia; without the supplements, Plaintiff could require a transfusion.

Plaintiff attended an OPT meeting conducted by Defendant Apol on May 27, 2014. Also present at the meeting were an unknown female professional and a male doctor (possibly Dr. Eric Lanes). Defendant Apol reviewed two medical kites filed by Plaintiff about the discontinuation of his medications.  Defendant Apol told Plaintiff that the medications would not be resumed until Plaintiff seriously injured himself.  Apol continued, saying that Plaintiff would not be transferred from ICF, even if he did injure himself.   The male doctor advised Defendant Apol that he remembered Plaintiff from before, and he recommended resuming the medications because Plaintiff seemed much improved.  Apol refused to resume the medications.  Plaintiff contends that he has a liberty interest in his mental health and a property interest in his necessary medications.

-5-

Plaintiff next complains that, since 2005, he has invested thousands of dollars in legal books and materials, in order to develop a business as a paralegal.  He complains that the mental instability and lethargy caused by the termination of his medications is diminishing his capacity to function as a litigator and fully enjoy the property interests of his books and documents.  He also alleges that he is severely depressed, paranoid, and fatigued, and he entertains homicidal and suicidal thoughts.  According to Plaintiff, Defendants are well aware that, when he is not adequately medicated, he is likely to act violently and commit felonies.  Plaintiff insists that Defendants intend to cause so much psychological stress to Plaintiff that he, like prisoner Boyd, commits suicide.

In his next set of allegations, Plaintiff complains that unnamed Defendants interfered with his legal mail between March 24, 2014, and April 10, 2014.  As a result, Plaintiff did not receive a copy of a report and recommendation issued in *Annabel v. Heyns et al.*, No 2:12-cv-13590 (E.D. Mich. Mar. 24, 2014).  Because Plaintiff failed to file objections to the report and recommendation, his case was dismissed on April 30, 2014.  He asserts that the interference with his mail was retaliatory and violated his right to access the courts.  In his summary of claims, Plaintiff alleges that Defendants Heyns, Campbell and Nichols are responsible for interference with his mail.

Plaintiff next complains that, since March 24, 2014, when he was placed on modified grievance access,[2] he has not been allowed to file a single grievance or grievance appeal.  Plaintiff contends that Defendants prevented him from filing grievances in retaliation for his litigation.

---

[2] Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH.  (eff. July 9, 2007).  The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance.  *Id.*  While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy.  *Id.*, ¶ KK.

In addition, Plaintiff alleges that Defendants Smith, Norwood and Huss retaliated against him by employing prisoner Halton to harass and repeatedly threaten Plaintiff. According to Plaintiff, on Halton's first morning in the yard, Halton screamed vulgarities and threats into Plaintiff's open cell window. Halton told the guards that he planned to physically attack Plaintiff, but he was not issued a misconduct ticket. Plaintiff alleges that Halton also attempted to incite gang bangers against Plaintiff. On June 17, 2014 at 2:15 p.m., Halton and Plaintiff left the unit to a library call-out. On the way, an unknown officer stopped Plaintiff, and Halton repeated his threats against Plaintiff. In the law library, Halton glared at Plaintiff from behind a bookcase. Because he was stressed and unmedicated, Plaintiff "was coerced" into attacking Halton with a "bare ink pen." (*Id.* ¶ 56, Page ID#22.) Plaintiff was taken to segregation, where he was denied bedding until 9:30 p.m. on June 18, 2014, after Plaintiff had broken a sprinkler head. Plaintiff was not given hygiene items or other property from June 17 to July 3, 2014.

On June 19, 2014, Defendant Zwiker met with Plaintiff to review a Class I misconduct ticket for possession of a weapon. Zwiker allegedly mocked Plaintiff, telling him that he would be prosecuted on a weapons charge. Plaintiff claims that Zwiker denied him due process by withholding the Class I misconduct report, preventing Plaintiff from receiving 24-hour notice of the hearing. Zwiker allegedly mocked Plaintiff by saying, "Too bad, I gave you your due process." (*Id.* ¶ 59, Page ID#23.) Later that same day, Zwiker allegedly mocked Plaintiff's Christian religion by appearing at Plaintiff's door with a copy of the Qu'ran and the Talmud.

From June 17 through July 2, 2014, Plaintiff refused his Kosher meal trays, fearing staff tampering. For nearly every dinner meal of the last week of that period, Zwiker personally offered Plaintiff an uncovered food tray, saying how delicious the food looked and mocking Plaintiff.

Plaintiff alleges that Zwiker violated prison policy by uncovering the food tray.  He also alleges that Zwiker acted in retaliation for Plaintiff's successful settlement of a prior lawsuit, in which Plaintiff, as a Judaic Christian, claimed entitlement under the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), to a kosher diet. *See Annabel v. Caruso et al.*, 1:09-cv-176 (W.D. Mich.) (Ord. of Dismissal July 19, 2012).

In addition, during the same two-week period, Defendant Zwiker and two unknown others allegedly withheld Plaintiff's legal mail. On July 2, 2014, Assistant Resident Unit Supervisor Lemke delivered three items:  (1) unspecified rules and forms from the Sixth Circuit; (2) an order granting leave to amend a complaint in *Annabel v. Frost et al.*, 2:14-cv-10244 (E.D. Mich. June 23, 2014); and (3) the MDOC defendants' motion for summary judgment in the same case, which was filed on June 27, 2014.

Plaintiff next complains that Defendants Apol and Yee violated MDOC policy by not offering him a psychological evaluation until five days after he began his hunger strike, rather than after three days, as prescribed under the rule.  They also only offered the evaluation four times between June 17 and July 2, 2014.  On June 24, 2014, Defendants Apol and Yee completed paperwork for a panel hearing to forcibly medicate Petitioner.  The paperwork contained numerous verbatim quotes from Plaintiff, demonstrating that Defendants had made audio recordings of Plaintiff.  Plaintiff contends, however, that the paperwork omitted many things and misrepresented others.  According to Plaintiff, he would not need to be forcibly medicated if Defendants had not been hostile and untrustworthy, causing Plaintiff to fear taking his medications.  He claims that the injections of medication have caused him pain and physical injury and have interfered with his ability to function.

In addition, Plaintiff claims that Defendant Heyns is directly involved in the denial of Plaintiff's appropriate mental health treatment, because he has cut the budget for such treatment, resulting in the "warehousing [of] mentally ill prisoners who have become self-injurious or psychotically disruptive . . . ." (*Id.* ¶ 68, Page ID#26.)  Plaintiff alleges that Defendant Heyns has discriminated against him and deliberately destabilized him by allowing him to be confined in segregation, where he has been denied the full services of the law library, as, while he was in segregation, he only had access to secured mini-law-library rooms.  Plaintiff argues that he was denied access to hygiene supplies from June 17 to July 2, 2014, while he was in segregation.  He also alleges that he has never been provided toothpaste containing fluoride.

According to Plaintiff, his post-traumatic stress disorder has been aggravated to the point that he experiences frequent nightmares, severe paranoia, thoughts of suicide and self-injury, weight loss, extreme depression, anger, rage and fear.  He alleges that all Defendants have conspired to retaliate against him in violation of the First Amendment; that all Defendants have discriminated against him in violation of the RA, the ADA, and the Equal Protection Clause on the basis of his mental disability and anemia; that all Defendants have been and continue to be deliberately indifferent to his serious medical and psychological needs; that Defendants Smith, Norwood, Huss and Zwiker have violated his rights under the Free Exercise and Establishment Clauses of the First Amendment; that Defendants Smith, Norwood, Huss and Zwiker violated his Eighth Amendment rights by not giving him hygiene supplies and cleaning supplies while he was in segregation; and that Defendants Heyns, Campbell, and Nichols violated his right of access to the courts when they interfered with the delivery of the March 24, 2014 report and recommendation, causing dismissal of Case No. 2:12-cv-13590.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

II.   Immunity

Plaintiff may not maintain a § 1983 action against the MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826  (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses Plaintiff's § 1983 claim against the MDOC.

Plaintiff also sues the MDOC and the remaining Defendants in their official capacities under the ADA and the RA.  The Supreme Court has held that Title II of the ADA applies to state prisons and inmates.  *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the

phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named the MDOC as a Defendant and Defendants Heyns in his official capacity.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006); *see also Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. However, Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Thus, Plaintiff properly brings his ADA claims against the MDOC and the remaining Defendants in their official capacities.

The requirements for stating a claim under the RA are substantially similar to those under the ADA, except that the RA specifically applies to programs or activities receiving federal financial assistance. By accepting these funds, states waive sovereign immunity from claims under the RA. *Nihiser v. Ohio EPA*, 269 F.3d 626, 628 (6th Cir. 2001). For purposes of this opinion, the Court will assume that the MDOC receives federal assistance for the prison programs and activities at issue. As a consequence, the MDOC and its agents acting in their official capacities are not immune from suit.

-11-

III.   <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Conspiracy

Although Plaintiff repeatedly alleges that all Defendants were engaged in a conspiracy to retaliate against him for his litigation history, his factual allegations do not support such a claim. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action.'" *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged co-conspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete events that occurred over a period of years involving numerous individual officers at multiple prisons. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement

between them.  He relies entirely on a highly attenuated inference from the mere fact that he has been subjected to treatment with which he disagrees by a variety of prison officials in various circumstances.  As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.  Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.  In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### B.     Claims of Others

Plaintiff complains that Defendant Campbell transferred prisoner Nolan, a Unit 4 representative to the Warden's Forum, to Unit 5, just as he had transferred Plaintiff in a claim he raised in *Annabel v. Frost et al.*, No. 2:14-cv-10244 (E.D. Mich.).  He also alleges that, on April 30, 2014, prisoner Boyd, whom Plaintiff previously had assisted in litigation, committed suicide, ostensibly because of staff harassment.  Plaintiff witnessed Boyd's suicide, and he had witnessed the suicide of another prisoner in September 2013, who also was mistreated by staff.  Although Plaintiff's claims are unclear, he appears to be challenging the treatment of other prisoners by unidentified state actors.

Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v. Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992).  As a layman, Plaintiff may only represent himself with respect to his

individual claims, and may not act on behalf of other prisoners.  *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978).

## C.  Employment

Plaintiff contends that he has invested thousands of dollars in legal books and materials, from which he developed a business as a prisoner paralegal.  He asserts that, by depriving him of necessary medications and injecting forced medications, Defendants caused him to become seriously mentally ill and unable to exercise his liberty and property interest in his employment.

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 579 (1972)).  Contrary to his assertions, Plaintiff does not have a federally cognizable liberty or property interest in acting as a paralegal.

The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment.  *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (same).  Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 2003 WL 21518730 at *2 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d

627, 629-30 (3d Cir. 1989)).  Under these authorities, Plaintiff fails to state a due process claim arising from any interference with his prison employment.[3]

### D.    Access to the Courts

Plaintiff alleges that Defendants Heyns, Campbell and Nichols are responsible for the fact that he did not receive his legal mail between March 24, 2014 and April 10, 2014, resulting in his failure to receive a copy of the March 24, 2014 report and recommendation issued in *Annabel v. Heyns*, No. 2:12-cv-13590 (E.D. Mich.), recommending that Defendants' motion for summary judgment be granted.  Because he did not receive the report and recommendation, Plaintiff filed no objections, and the case was dismissed on April 30, 2014.  *Id.*  In addition, Plaintiff alleges that Defendant Zwiker interfered with the delivery of his incoming legal mail between June 17 and July 2, 2014.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.  The right of access to the courts also prohibits prison officials from erecting barriers that

---

[3]Moreover, Michigan prisoners are expressly "prohibited from directly or indirectly charging or receiving compensation in any form, including in money, goods, or services, for providing legal services to, or obtaining legal services from, another prisoner.  MICH. DEP'T OF CORR., Policy Directive 05.03.116 ¶ N (eff. July 21, 2008).  The possession of money or other negotiable instrument is punishable as a Class II misconduct.  MICH. DEP'T OF CORR., Policy Directive  03.03.105, Attach. B (eff. Apr. 9, 2012).  Similarly, the possession of property belonging to another prisoner is contraband.  *See* MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶¶ CC-FF (eff. Dec. 12, 2013).  Possession of unauthorized, non-dangerous contraband is a Class III misconduct.  *See* MICH. DEP'T OF CORR., Policy Directive 03.03.105, Attach. C (eff. Apr. 9, 2012).

may impede the inmate's accessibility to the courts.  *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation."  *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3).  "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant."  *Id.* at 416.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000.  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

1.     Heyns, Cambell, & Nichols

As discussed, Plaintiff complains that Defendants Heyns, Campbell and Nichols interfered with the delivery of his legal mail, thereby preventing him from receiving and timely objecting to a report and recommendation issued in one of Plaintiff's federal lawsuits.  Because Plaintiff failed to object, his case was dismissed.

While Plaintiff's allegation of actual injury likely is sufficient to support an access-to-the-courts claim, Plaintiff fails to allege facts suggesting that Defendants Heyns, Campbell and

Nichols were actively involved in that deprivation.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that Defendants Heyns, Campbell or Nichols engaged in any active unconstitutional behavior with respect to his legal mail.  Indeed, Defendant Heyns is the Director of the MDOC and would have had no access to legal mail at ARF, and Defendant Campbell is the Deputy Warden at ARF and is highly unlikely to be involved in mail delivery.  Moreover, no facts link any of the three Defendants to any disruption in Plaintiff's legal mail.  Because he fails to allege any facts about the involvement of Defendants Heyns, Campbell and Nichols in the alleged mail disruption, Plaintiff fails to state an access-to-the-courts claim against them.

### 2.    Zwiker & Unknown Others

Plaintiff next alleges that Defendant Zwiker and two unknown others withheld his legal mail while he was in segregation between June 17 and July 2, 2014.  On July 2, 2014, Officer

Lemke finally delivered the following mail items: (1) rules and forms from the Sixth Circuit; (2) an order granting leave to amend a complaint, which was issued on June 23, 2014; and (3) defendant's motion for summary judgment in *Annabel v. Frost et al.*, 2:14-cv-10244 (E.D. Mich. June 27, 2014).

Plaintiff fails entirely to allege any actual injury caused by Zwiker or any unnamed others because of a delay in the receipt of his mail. He alleges no deadline that he missed as a result of the delay in his receiving orders. Moreover, he actually received the motion for summary judgment within a reasonable mailing time after it was issued (three business days). His time for responding therefore could not have been impaired. Because he alleges no actual injury, *see Lewis*, 518 U.S. at 349, he fails to state an access-to-the-courts claim against Defendant Zwiker or the unknown officers.

### E.      First Amendment – Retaliation

Plaintiff alleges that all Defendants engaged in retaliation against him for filing his lawsuits. Plaintiff complains that he has been prevented from filing or appealing prison grievances since March 24, 2014, ostensibly in retaliation for his exercise of his First Amendment rights. He contends that Defendant Campbell signed the order transferring him to ICF, in retaliation for Plaintiff's complaints and litigation. He also alleges that Nichols must have been involved in the transfer decision, because Nichols inaccurately screened his security risk on May 5, 2014, by improperly counting a dismissed misconduct ticket. Plaintiff complains that unknown ARF officers attached a stun cuff to his left ankle during transfer, though they did not use it. He contends that Defendant Apol made hostile and insulting remarks about Plaintiff's litigation history, threatened to initiate forced-medication proceedings if Plaintiff refused to take his medication, refused to reinstate the medications terminated by Defendant Yee, and ultimately initiated proceedings to

authorize the forced administration of medications to Plaintiff.  He also alleges that Defendant Yee retaliated by terminating his ongoing medication and by working with Apol to authorize forced medication.  In addition, he asserts that Defendants generally have refused to allow him to file any grievance or grievance appeal since March 24, 2014, ostensibly in retaliation for his litigation efforts. Further, he alleges that Defendants Smith, Norwood and Huss retaliated against him by employing prisoner Halton to harass Plaintiff.  He alleges that Defendant Zwiker retaliated by mocking Plaintiff, delivering his kosher meals uncovered, and failing to deliver his legal mail between June 17 and July 3, 2014.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a federal civil rights complaint undoubtedly is conduct protected by the First Amendment.  Plaintiff's many allegations of retaliation, however, fail the remaining prongs of the retaliation test.

### 1.      Modified Access

To the extent that Plaintiff alleges that he is being denied grievance forms and the ability to file grievances since March 24, 2014, in retaliation for exercising his right to petition government, he fails to state a claim.  The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim.  *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).  Title 42 United States Code, § 1997e(a) requires prisoners to exhaust "such administrative remedies as are available" prior to filing suit in federal court.  If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his "available" administrative remedies as required by § 1997e(a).  Because placement on modified access cannot prevent Plaintiff from filing claims in federal court, it is not sufficiently adverse to state an access-to-the-courts claim.  *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. Sept. 26, 2001).

### 2.      Stun Cuff

Plaintiff next alleges that unknown officers placed him in a stun cuff during transport from ARF to St. Louis, Michigan, in retaliation for his litigation efforts.  Plaintiff makes no allegation that any Defendant either threatened or used force against him.  Mere placement in a stun cuff for a short period does not constitute action that is sufficiently adverse to deter a reasonable person from exercising his rights.  Moreover, Plaintiff alleges no fact suggesting that the decision to place him in a stun cuff was in any way related to his protected conduct.  Plaintiff therefore fails to allege facts suggesting either adverse action or retaliatory motive.

### 3.  Denial of Hygiene Supplies & Bedding

Plaintiff complains that from the time he arrived in segregation on June 17 to July 2, 2014, Defendants failed to give him hygiene supplies.  In addition, he complains that the prison has never provided fluoride toothpaste.  Further, he vaguely complains that, while in segregation, he and other prisoners are not allowed the supplies they need to maintain clean cells.  He also complains that he was denied bedding between June 17, 2014, at 2:30 p.m. to June 18, 2014, at 9:30 p.m., a total of 31 hours.

The Court assumes without deciding that the denial of necessary hygiene items for a substantial period of time would rise to the level of adverse action.  Plaintiff, however, fails to identify the individual Defendants responsible for his brief derprivations, and he fails entirely to allege facts suggesting that any Defendant was motivated to deprive him of the items because of Plaintiff's protected conduct.  Plaintiff's wholly conclusory allegations therefore fail to state a claim.

### 4.  Smith, Norwood & Huss

Plaintiff contends that Defendants Smith, Norwood, and Huss hired prisoner Halton to harass him.  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez*, 826 F.2d at 1538-39); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants either hired Halton or intended to retaliate against Plaintiff because he filed a grievances and lawsuits against these or other MDOC employees. At most, Plaintiff alleges that some officer failed to discipline Halton for yelling at and threatening Plaintiff. Such allegations fall short of adverse action. Accordingly, Plaintiff's speculative allegation fail to state a claim against Defendants Smith, Norwood and Huss.

### 5.      Campbell & Nichols

Plaintiff alleges that Defendants Campbell authorized his transfer from ACF to ICF on May 13, 2014, and he "presume[s]" that Defendant Nichols was involved. (Compl., Page ID#12.) In his summary of claims, Plaintiff asserts that Nichols completed a security classification screening form on May 5, 2014, in which Nichols mistakenly counted a misconduct that was dismissed. Plaintiff broadly asserts that the actions were taken in retaliation for his lawsuits and grievances.

Plaintiff's allegations of retaliation are wholly conclusory. In fact, they conflict with admissions made by Plaintiff in other portions of his complaint. Plaintiff does not allege that any scoring error by Nichols affected his security classification level. In fact, he admits that he consistently has been scored at a level high enough to be placed in a Level V facility. In addition, Plaintiff admits that he himself requested transfer out of the RTP on May 13, 2014, prior to Campbell's authorization of his transfer. In the face of these admitted facts, Plaintiff fails to identify facts suggesting that either Campbell or Nichols acted to retaliate against Plaintiff for any particular instance of protected conduct. Plaintiff's conclusory allegations of a retaliatory motive therefore are

insufficient to demonstrate a causal connection between his protected conduct and his transfer.  *See Iqbal*, 556 U.S. at 678; *Harbin-Bey*, 420 F.3d at 580; *Gutierrez*, 826 F.2d at 1538-39.

### 6. Defendant Zwiker

Plaintiff alleges that Defendant Zwiker retaliated against him for having favorably settled a lawsuit granting him a Kosher diet in the pursuit of his Judaic Christian religion.  Defendant Zwiker allegedly mocked Plaintiff's Christianity by, on one occasion, appearing at his cell door with a copy of the Qu'ran and the Talmud.  Also, for two weeks between June 17 and July 2, 2014, Zwiker also regularly opened Plaintiff's kosher meal tray before giving it too him, saying how delicious the food looked.

The law is clear that such minor verbal harassment is not an adverse action that would deter a person of ordinary firmness from exercising his rights.  *See Thaddeus-X*, 175 F.3d at 398) (stating that "certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations"); *see also Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (mere verbal harassment and minor threats to not constitute adverse action); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002) (same).  Plaintiff therefore fails to state a retaliation claim against Zwiker for his alleged religious harassment.

Moreover, Plaintiff fails to state a retaliation claim against Defendant Zwiker and other unknown officers[4] for delaying his receipt of legal mail for two weeks.  It is far from clear that a two-week delay in receiving legal mail, absent other consequences, is sufficiently adverse to support a retaliation claim.  That is particularly true where, as here, the materials that were delayed were either inconsequential or delayed for a shorter period than two weeks.  For example, the only

---

[4]Plaintiff has not named the unknown officers as parties in the action, who would also be entitled to dismissal.

item delay for two weeks was a copy of unspecified rules and forms of the Sixth Circuit.  Such a delay clearly is a de minimis deprivation within the meaning of *Thaddeus-X*.  Moreover, the court order granting leave to amend was not mailed until July 23, 2014, and the motion for summary judgment was not filed until July 27, 2014.  Given reasonable mailing times, the delay on these items was small to none.  As a consequence, Plaintiff fails to allege an adverse action related to his mail.

For all these reasons, Plaintiff fails to state a retaliation claim against Defendant Zwiker.

### 7.     Defendants Apol, Yee & Gerlach

Upon review, the Court concludes that Plaintiff's allegations against Defendants Apol and Yee are sufficient to warrant service on his claim that they deprived him of medical care in order to retaliate against him for filing complaints and lawsuits.

Plaintiff's allegations against Defendant Gerlach are extremely limited.  Plaintiff alleges only that Gerlach terminated Plaintiff's iron supplement, which Plaintiff claims could cause him serious physical injury from his microcytic hypochromic anemia.  Plaintiff alleges no facts suggesting that Defendant Gerlach was named in any of Plaintiff's prior lawsuits or, if so, whether the litigation was even temporally connected to Gerlach's action to terminate the iron supplement.  In addition, beyond Plaintiff's global conspiracy theory, no facts suggest that Gerlach would have had a reason to retaliate for grievances and lawsuits filed against others.  In the absence of any facts suggesting retaliatory motive, Plaintiff fails to state a retaliation claim against Defendant Gerlach.

F.      **First Amendment – Religion Clauses**

Plaintiff complains that Defendants Smith, Norwood, Huss, and Zwiker demonstrated hostility to his religion by mocking his religion and harassing him, thereby depriving him of his right to enjoy the practice of his faith.   Plaintiff's factual allegations about the alleged harassment are extremely limited.  He contends that, on June 19, 2014, Zwiker mocked his Judaic Christian religion by appearing at his door with a copy of the Qu'ran and the Talmud.  During Plaintiff's confinement in segregation between June 17 and July 2, 2014, Zwiker also ostensibly mocked his kosher diet by regularly uncovering Plaintiff's food tray and saying how delicious the food looked.  He makes no allegations about the actions of Defendants Smith, Norwood or Huss.

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion.  *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief.  *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348, 1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

Plaintiff's allegations fail to demonstrate that Defendant Zwiker's allegedly harassing comments and conduct were sufficient to infringe upon Plaintiff's religious rights.  Courts routinely have rejected claims of constitutional violations based solely on verbal harassment.  *See, e.g., Shuaib v. Siddum*, No. 88-86126, 1988 WL 86126, at *1 (6th Cir. 1988) (holding that prison officials'

-26-

refusal to address prisoners by their newly adopted legal names does not violated the religion clauses of the First Amendment) (citing *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (holding that verbal harassment is insufficient to support an Eighth Amendment claim)); *Hailes v. Collier*, No. 2:12-cv-687, 2014 WL 2515581, at *5 (S.D. Ohio June 3, 2014) (holding that verbal harassment is insufficient to state a claim under § 1983 for violation of any constitutional amendment, including the First Amendment religion clauses) (citing *Siggers v. Renner*, 37 F. App'x 138, 141 (6th Cir. 2002, and *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012)); *Mizori v. Miller*, No. 5:09-cv-10824, 2009 WL 777640, at *2 (E.D. Mich. Mar. 20, 2009) (holding that verbal harassment was insufficient to support a claim of religious discrimination under the First Amendment). Especially in light of the minimal nature of the harassment alleged, Plaintiff fails to state a claim for violation of his religious rights under the First Amendment.

### G.    Eighth Amendment

Plaintiff alleges a variety of claims under the Eighth Amendment. He alleges that he witnessed a suicide that unknown custody officers encouraged, and he contends that he experienced post-traumatic stress from the incident. He also alleges that Defendants Apol, Yee and Gerlach have deprived him of adequate mental and physical health care services, deliberately ignored his medical history, taken him off his previously prescribed psychotropic medication and iron supplement, and instituted forced medication, all of which caused him significant harm. Plaintiff complains that Defendant Heyns is responsible for his inadequate medical treatment, because Heyns cut the budget for medical care. In addition, Plaintiff complains that he was kept in his segregation cell for 31 hours without bedding, that he was denied hygiene items for two weeks, and that he was given inadequate cleaning supplies. He also argues that the MDOC has not provided fluoride toothpaste for years.

-27-

Further, Plaintiff complains that Defendants Smith, Norwood and Huss encouraged routine staff abuse, mistreatment, and harassment of prisoners.  Finally, he alleges that unknown officers placed him in a stun cuff during his transfer from ARF to St. Louis, Michigan.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

1.     Mental and Physical Health Claims

Plaintiff contends that Defendants Apol, Yee, and Gerlach have denied him necessary physical and mental health treatment.  Upon initial review, the Court concludes that Plaintiff's allegations are sufficient to state a claim.  The Court therefore will order service of Plaintiff's Eighth Amendment claims on Defendants Apol, Yee and Gerlach.

Plaintiff's allegations against Defendant Heyns, however, are wholly conclusory.  Nothing in the facts alleged by Plaintiff suggests that the actions of Defendants Apol, Yee and

Gerlach were in any way affected by budgetary concerns. Plaintiff therefore fails to state an Eighth Amendment claim against Defendant Heyns arising out of his medical care.

### 2. Hygiene Items and Cell Conditions

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis*, 257 F.3d at 511; *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)). *But see Flanory v. Bonn*, 604 F.3d 249, 255-56 (6th Cir. 2010) (holding that, while limited periods of deprivation were mere inconveniences, allegations that an inmate was deprived of toothpaste for 337 days and experienced dental health problems did not constitute a temporary inconvenience and were sufficient to state an Eighth Amendment claim).

Plaintiff's complaint about the 31-hour delay in receiving bedding is far too minor and short-lived an inconvenience to amount to an Eighth Amendment violation. *See Stephens v. Carter Cnty. Jail*, No. 86-5565, 1987 WL 36997, at * (6th Cir. Apr. 10, 1987) (dismissing prisoner's

claim that having been kept in a holding cell for 20 hours without food, water, sheets, a blanket, a shower and a bunk-bed violated the Eighth Amendment); *Hawk v. Richland Cnty. Jail*, No. 1:12-cv-326, 2012 WL 2742550, at *3 (N.D. Ohio Jul. 9, 2012) (holding that being locked in a cell overnight without bedding is a temporary inconvenience that falls short of an Eighth Amendment violation). Moreover, courts have recognized that the deprivation of other hygiene items for two weeks does not rise to the level of an Eighth Amendment claim. *See, e.g., Griffin v. Womack*, No. 1:12CV-P195-R, 2013 WL 28669, at *4 (W.D. Ky. Jan. 2, 2013) (holding that the deprivation of hygiene items such as a towel, toothbrush, toothpowder, comb and soap for 34 days did not amount to an Eighth Amendment violation); *Crump v. Janz*, No. 1:10–cv–583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (holding that lack of hygiene items and other personal property for 35 days did not establish an Eighth Amendment violation);  *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation.").

Further, while the courts have recognized that the deprivation of basic hygiene items like soap, a toothbrush, and toothpaste are minimal civilized necessities, the court is aware of no case indicating that the Eighth Amendment requires that prisoners have access to toothpaste that is fluoridated.  Plaintiff's allegation about the lack of fluoridated toothpaste therefore fails entirely to demonstrate an objectively serious need entitled to constitutional protection.

Finally, although Plaintiff broadly complains that he and other segregation prisoners are given insufficient supplies to clean their cells as often or as thoroughly as Plaintiff would like, he makes no factual allegations about the actual sanitary conditions of his cell or the particular Defendants responsible for the alleged deprivation.  As a consequence, Plaintiff falls well short of

pleading sufficient facts to state a plausible claim under the Eighth Amendment. *See Iqbal*, 556 U.S. at 679.

### 3. Smith, Norwood & Huss

Plaintiff alleges that Defendants Smith, Norwood and Huss had an extensive history of encouraging abuse, mistreatment and harassment, because they failed to discipline their subordinates and even promoted some subordinates who had been targeted with verbal abuse. As previously discussed, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. A plaintiff must allege that a defendant, through his own individual actions, violated the constitution. *Iqbal*, 556 U.S. at 676. Plaintiff fails entirely to demonstrate that Defendants Smith, Norwood and Huss personally engaged in conduct violating the Eighth Amendment.

### 4. Stun Cuff

Plaintiff alleges that his placement in a stun cuff during his transfer from ARF amounted to cruel and unusual punishment. He contends that the stun cuff was capable of delivering 80,000 volts of shock, which, if used, would have amounted to cruel and unusual punishment. Because Plaintiff was neither threatened with the cuff's use nor experienced a shock, his mere placement in the cuff for a few hours by an unknown party is insufficient to state a claim of deliberate indifference by any named Defendant.

## H. Equal Protection

Plaintiff complains that he was denied equal protection on the basis of his mental and physical disabilities. Plaintiff makes no specific allegations of discrimination; he merely claims that

Defendants discriminated against him, apparently in the delivery of medical and psychiatric care, because of his disabilities.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV, § 1; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). The Supreme Court repeatedly has recognized that disability status is not a fundamental right subject to strict scrutiny. *See Tennessee v. Lane*, 541 S. Ct. 509, 540 (2004) (citing *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366-68 (2001), and *Cleburne*, 473 U.S. at 439). As a consequence, Plaintiff's claim must be reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006).

"Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff provides no specific factual allegations to support his contention that he was subjected to discrimination, and he identifies no similarly situated individuals without a disability who were treated differently.  Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

## I.      Violations of the ADA and RA

Plaintiff alleges that he was deprived of his rights under the ADA and the RA, because he was subjected to discrimination because of his mental disability and anemia.

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132).  In order to state a claim under Title II of the ADA, Plaintiff must show:  (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability.  *See Tucker v. Tennessee*, 539 F. 3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003).  The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity."  42

U.S.C. § 12131(2).  *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008).  The ADA defines the term "disability" as follows:  "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2).  Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability."  29 U.S.C. § 794(a).

Assuming that Plaintiff's mental illness and blood disorder constitute disabilities under the ADA and RA, Plaintiff does not allege that he has been discriminated against, or that he has been unable to participate in or receive the benefit of a service, program, or activity available to other inmates by reason of that disability.  Instead, Plaintiff alleges that he has not received necessary medical treatment, and he alleges that Defendants' failure to treat him was motivated by a desire to punish him for exercising his right to petition government.  He does not, however, allege facts showing that the asserted denials were due to his disability, as is necessary to state a claim under the ADA and the RA.  In sum, his ADA and RA claims are wholly conclusory and therefore fail to state a claim under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Because there are no other claims against the MDOC, it will be dismissed as a Defendant in this action.

## J.    RICO Claims

Plaintiff claims generally that all Defendants' conduct constitutes racketeering in violation of RICO.  *See* 18 U.S.C. § 1962.  Section 1964(c) of RICO, the provision upon which Plaintiffs' claim apparently is founded, creates a private cause of action, as follows:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

18 U.S.C. § 1964(c)(1982) (emphasis added).  Section 1962  makes it illegal to engage in a pattern of racketeering activity. 18 U.S.C. § 1962(c)(1982).  "Racketeering activity" is defined in section 1961(1) in terms of a long list of federal and state crimes, including mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343.  A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten year period, 18 U.S.C. 1961(5), generally referred to as the "predicate acts" or "predicate offenses" underlying the RICO claim.

The Sixth Circuit and other federal courts consistently have rejected RICO claims concerning prison conditions.  *See, e.g.*, *Hyland v. Martin*, No. 00-1269, 2000 WL 1647952, at *1 (6th Cir. Oct. 25, 2000) (affirming dismissal of prisoner RICO conspiracy claim regarding restrictions imposed on photocopying credit card)*; see also Jenkins v. C.S.C./C.C.C.F. Corr.  Servs. Corp.*, No. 99-1518,  2000 WL 1179772, at *1 (10th Cir. Aug. 21, 2000) (dismissing prisoner RICO claim alleging embezzlement from inmate accounts); *Petersen v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (affirming dismissal of RICO claims alleging warden accepted bribes from prison food services company); *Taylor v. Ornoski*, 2006 WL 1646148 (N.D. Cal. June 14, 2006) (dismissing prisoner RICO claims seeking to challenge regulations restricting vendors who provide telephone service to inmates).  In *Ziegler v. McGinnis*, 32 F. App'x 697 (6th Cir. 2002), the Sixth Circuit rejected a claims brought by state prisoners under § 1983 and RICO concerning the MDOC telephone policy.  The court held that the prisoners had no RICO claim based upon the MDOC's

telephone policy because they did not allege injury to business or property, a requirement under § 1964(c). *Id.* at 699.

Plaintiff alleges that Defendants' actions have interfered with his property by causing him mental distress that diminishes his ability to run his legal-writing business. Such allegations are wholly conclusory and therefore fail to establish predicate acts upon which to base a RICO claim. *See Iqbal*, 129 S. Ct. at 1949-50. Moreover, Plaintiffs' RICO claim fails to state a claim for relief because he cannot demonstrate any injury to business or property, which is a prerequisite to a successful civil RICO claim. *See* 18 U.S.C. § 1964(c); *Ziegler*, 32 F. App'x at 699; *see also Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *Looper v. Gibson*, 63 F. App'x 877, 878 (6th Cir. 2003). As previously discussed, Plaintiff has no right to maintain a business in prison, and he therefore has no legitimate claim to property he may have acquired through the pursuit of that business. For both reasons, Plaintiffs' RICO claim will be dismissed.

## K.    Violations of MDOC Policy

Plaintiff alleges that Defendants violated MDOC policies in a variety of ways: (1) they failed to provide bedding until the day after Plaintiff was placed in segregation, rather than following policy and custom to deliver bedding the same day; (2) Zwiker opened his meal trays, in violation of policy; (3) Defendants improperly resolved his grievances under MDOC policy; (4) Defendants improperly placed him on modified grievance access and denied him grievance forms and appeals; and (5) when Plaintiff was on hunger strike, Defendants Apol and Yee did not evaluate his condition within the precise times provided under MDOC policy.

Section 1983 does not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir.

1994).  Plaintiff's assertions that Defendants violated MDOC policies therefore fail to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims against Defendants Heyns, Campbell, Smith, Huss, Norwood, Zwiker and Nichols, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id.*  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claim against Defendant Heyns, Campbell, Smith, Huss, Norwood, Zwiker, and Nichols will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint against Defendants Michigan Department of Corrections, Heyns, Campbell, Smith, Huss, Norwood, Zwiker, and Nichols will be dismissed on grounds of immunity and failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court also will dismiss Plaintiff's First Amendment retaliation claim against

Defendant Gerlach.  Plaintiff's state-law claims against Defendants Heyns, Campbell, Smith, Huss, Norwood, Zwiker, and Nichols will be dismissed without prejudice.  The Court will serve the remainder of the complaint against Defendants Apol, Yee and Gerlach.

An Order consistent with this Opinion will be entered.


Dated:   __August 21, 2014_____          /s/ Paul L. Maloney_____
                                          Paul L. Maloney
                                          Chief United States District Judge